# Marshall's Estate.

*Decedents' estates—Widow's exemption—Laches—Order of sale.*

A delay in taking out letters of administration, not caused by the widow, will not prejudice her in her right of exemption.

Where a widow does not make a formal demand for her exemption until three months after the date of letters of administration, no presumption arises from such delay on her part of an intention to waive her privilege. In such case the fact that the demand was not made until after an order to sell the real estate had been obtained, is immaterial.

There is no hard and fast rule of law that declares that a widow's claim of exemption is always too late if an order of sale has been already obtained.

Where an administrator disregards a demand made by a widow for her exemption, when the fund is yet intact in his hand, and distributes the money without taking any refunding bonds, and without asking the court to make a decree of distribution or to appoint an auditor, he will be personally liable to the widow for the whole amount of her exemption, if such exemption is properly due to her.

Argued March 8, 1906.   Appeal No. 8, March T., 1906, by L. P. Thomas, Administrator, from decree of O. C. Lycoming Co., March T., 1904, No. 44, dismissing exceptions to report of auditor in Estate of Joseph Marshall, deceased. Before RICE, P. J., PORTER, MORRISON, HENDERSON, ORLADY, BEAVER and HEAD, JJ.   Affirmed.

Exceptions to report of W. C. Gilmore, Esq., auditor.
The facts are stated in the opinion of the Superior Court.

*Error assigned* was in dismissing exceptions to auditor's report.

*James B. Krause*, with him *W. H. Bastin*, for appellants.— The widow did not make her claim for an appraisement and the exemption in time: Davis's App., 34 Pa. 256; Gibson's Estate, 5 Pa. Superior Ct. 57 ; Good's App., 152 Pa. 63 ; Bryan's Est., 4 Phila. 228 ; Gilleland v. Rhodes, 34 Pa. 187; Maier's Est., 1 Pearson, 420.

*Herbert T. Ames*, with him *T. H. Hammond*, for appellee.— The widow's demand for her exemption was made at the time of the appraisement, March 1, 1904, verbally twenty-two days after the administrator was appointed, and in writing May 11, 1904, three months and five days after his appointment, and was within a reasonable time : Burk v. Gleason, 46 Pa. 297 ; Kerns's Appeal, 120 Pa. 523 ; Sellers's Estate, 82 Pa. 153.

A demand made by a widow for her exemption before the sale of the real estate where no costs have been made except such as would have been incurred, if the claim had not been presented, is in time : Rank's Estate, 12 Phila. 67.

OPINION BY HEAD, J., April 23, 1906 :
The record does not disclose any cause for the somewhat unusual delay in taking out letters of administration in this estate.   As it is not alleged that the widow was in any way

to be charged with such delay she ought not to be prejudiced thereby. Until there was an administrator there was no one to whom she could make claim for her statutory allowance, commonly called her exemption.

The letters were actually granted to L. P. Thomas on February 6, 1904. The appraisement of the personal estate was made March 1, 1904. It was scarcely sufficient to pay the costs of appraisement, the total amount of the inventory being $3.32. The administrator, the two appraisers and the widow were together on that day and the auditor finds that then and there the widow made a verbal demand for her " widow's exemption." The appraisers heard it and testify to it. The auditor further finds " with some reluctance," as he states, that this demand was not heard by the administrator and was therefore not a complete or proper demand. On April 4, 1904, the administator, who did not seem to have regarded the widow as a person to be consulted or even informed concerning the various steps in the settlement of the affairs of her deceased husband, obtained an order for the sale of the real estate for the payment of debts, the sale being fixed for May 12, 1904. The land to be sold consisted of a single small piece which brought $400. The widow lived in the country some eighteen miles from the county seat. On May 11, the day before the sale, she came to Williamsport and consulted counsel who drew up a formal demand for her exemption and a request for an appraisement and this was handed to the administrator the same evening. He decided her demand was too late, refused to have an appraisement made and sold the property the following day.

Had the widow, under the circumstances above recited, lost her statutory privilege by unreasonable delay in making her demand? It has been frequently held that this privilege is a personal one and may be waived by the widow either by some unequivocal act manifesting her intention not to claim it, or by such unreasonable delay in making her demand as to warrant the presumption of such intention. But in no case has it ever been held that, where a formal demand was made within about three months from the date of the letters of administration, such a presumption of an intention to waive the privilege could arise. And in this case even the abortive attempt made

by the widow to have her claim reach the ear of the adminis-
trator when the personal property was appraised, was evidence
that she in fact entertained no such intention.

But, it is argued, even if the mere lapse of time is not suffi-
cient to convict the widow of laches, her claim should never-
theless be denied because an order to sell the real estate had
been applied for and obtained before she had made her formal
demand for an appraisement. The time at which an order to
sell real estate will be applied for is wholly within the discre-
tion of the administrator. In a case, like the present one,
where there is practically no personal estate at all, an applica-
tion might be made by him within a very few days after the
grant of his letters and before the widow had any reasonable
opportunity to be apprised of her rights. If there be a hard
and fast rule of law that declares a widow's claim is always too
late if an order of sale has been already obtained, then it would
follow that the jurisdiction of the courts, to determine in each
case what was a reasonable time within which her claim must
be made, would be ousted, and the whole question would be
disposed of by the administrator. In one case he might allow
her sufficient time to so inform herself as to enable her to in-
telligently consider the condition in which the affairs of her
husband had been left and her own situation consequent
thereon ; in another he might compel her to action without such
opportunity under penalty of losing her right to a humane and
beneficent provision of the law, thus making a second bereave-
ment follow the one already suffered. Such is not, cannot be, the
law, and the case of Davis's Appeal, 34 Pa. 256, cited and relied
on by appellant, is not a case really in point. There a widow se-
lected and elected to retain personal and real property amount-
ing to about $200, which was duly appraised and set apart
for her. She refused to take any more, desiring it to go to
creditors. The appraisement was filed and confirmed. More
than a year later, and after an order to sell the remaining real
estate had been obtained, she demanded a second appraise-
ment for the balance of $300. It was held she was con-
cluded by the first one. " The demand was too late. She had
already had one appraisement, and the act of assembly did not
give her two ; and besides, relying on the faith of her first
election and its approval by the orphans' court, the adminis-

trator had proceeded to incur expense in obtaining an order of sale and perhaps in advertising. . . . It is sufficient, however, to say that she was not entitled to a second appraisement."

It needs no argument to show that that case is not decisive of the present one. That an order of sale had been applied for here before the demand was made is, in and of itself, of no consequence, especially as it is not pretended that this action was taken in reliance upon anything done or omitted by the widow. Some small costs were doubtless incident to the granting of the order, but they would have been probably incurred in any event in order to dispose of the property and close up the estate.

But little need be said on the remaining question in the case. Some months after the sale of the real estate the widow was called on the telephone by her counsel and asked if she would accept $110 in satisfaction of her claim, that much being offered by the administrator. On the understanding that this was the most she could get out of it, she expressed her willingness to take it. This being on a Saturday, on the following Monday she called up her representative and withdrew her acceptance, stating she wanted all or none. This notice from her was given to the administrator, as the auditor expressly finds, whilst all of the fund was yet either in his actual possession or under his control. Notwithstanding this he insisted on distributing the money in accordance with his arrangement, without taking any refunding bonds, without asking the court to make a decree of distribution, or to appoint an auditor. The widow in due time received her allotment less counsel fees and expenses and has retained it as a payment on account. The auditor who was finally appointed to make a proper distribution of the fund in the hands of the administrator, awarded the whole sum to the widow on account of her exemption, she of course to allow credit for the amount previously paid to her. The facts found by the auditor and the authorities cited by him leave little room to doubt the correctness of the conclusions reached by him, and we are satisfied that in confirming the report no error was committed by the learned court below.

Decree confirmed and appeal dismissed at the costs of the appellant.