## Hartley's Estate.

*Decedents' estates—$500 exemption for children—Delay—Failure to notify guardian of appointment—Act of June 7, 1917.*

The $500 exemption allowed under the Act of June 7, 1917, P. L. 447, for children, will be awarded to them seven months after the death of the decedent, where no rights of others have intervened, and it appears that the claim for the exemption was not made because some one had been in fault in not notifying the guardian, a charitable institution, of its appointment as guardian.

Exceptions to auditor's report. O. C. Snyder Co.

*Jay G. Weiser*, for exceptions; *Cloyd Steininger*, contra.

POTTER, P. J., Jan. 31, 1923.—Isaiah Hartley died intestate on April 13, 1922, his wife having died on Feb. 27th of the same year, leaving six children to survive him, five of whom are minors.

The decedent left personal property amounting to $571.17 and real estate worth $605.50, or a total estate of $1176.67, which, after deducting the expenses of administration, leaves a balance, as shown by the first and final account of the administrator, of $898.39 for distribution by the auditor, the estate being insolvent, if the exemption is allowed the minor children, of which hereafter, and solvent if their claim is denied.

The four younger children of the decedent were placed in the United Evangelical Home, at Lewisburg, Union County, Pennsylvania, and in June, 1922, this institution was appointed as their guardian. By some one's default in the office of the Clerk of the Orphans' Court of Snyder County, this institution was not notified of its appointment as such guardian till about the middle of September, 1922, and, therefore, before that time assumed no guardianship over these children or their property.

The audit was held Nov. 11, 1922, E. E. Pawling, Esq., having been the auditor, when, for the first time, claim was made by the guardian for the $500 exemption for these minor children. The claim was allowed by the auditor, although objected to by Mr. Weiser, as counsel for creditors. Exceptions were filed before the auditor, which were dismissed by him, and exceptions were then filed in the Orphans' Court, which we are now called upon to dispose of, being four in number, as follows:

1. That the demand before the auditor for the benefit of the $500 Exemption Law came too late.

Hartley's Estate.

2. That according to the records filed in the estate, no demand or election was made by any one in authority for this allowance.

3. That no election was made to have personal property set apart or real estate, or both, or the proceeds of either, by the administrator or any one in behalf of the children.

4. That the estate having been settled and costs made, it is now too late to claim the said allowance out of the fund for distribution at the audit of this estate.

The claim to this exemption must come within the provisions of the Fiduciaries Act of June 7, 1917, § 12 *(a)*, P. L. 447, and can be claimed by the widow or children forming a part of the family of the decedent. In this case it is claimed for the children, who are minors, and who are maintained in the said United Evangelical Home as objects of charity, four of them being of tender years and not able to care for themselves.

The provisions of the Act of 1917 are more liberal to claimants than those of the Act of 1851; notably, in that the claimant may retain or claim either real or personal property, or the proceeds of either real or personal property, to the amount of $500.

If personal property is claimed, it is the duty of the executor or administrator to have it appraised and set apart to the widow or children ·by the appraisers appointed to appraise the other personal estate of the decedent. If real estate is claimed, it is to be appraised by two appraisers appointed by the Orphans' Court, who may be the same persons appointed to appraise the personal estate. If the $500 is claimed out of money or the proceeds of real or personal property, this sum shall be set apart to the widow or children by the executor or administrator out of the proceeds of said real or personal property after the same shall have been sold.

Section 12, clause *(e)* 1, provides that if the decedent leave to survive him minor children and no widow, his executor or administrator shall, without request made to him by any one, have appraised and set apart for the use and benefit of said minor children property to the value of $500. In this case the administrator disregarded his duties in the premises and took no steps to secure to these orphan children their due exemption. Should they suffer for his negligence in the matter?

Sub-division 2 of clause *(e)*, *supra*, provides that the guardian of said children, or if there be none, then the executor or administrator, with the appraisers, shall make selection of the property to be set aside, &c., for the children. Again, in this instance, there was no one to act for these children till the middle of September, 1922. Again we ask, must these children suffer because of the neglect of duty of *some one* who did not do what he should have done?

This claim for the $500 exemption is made from the proceeds of the real and personal estate of the decedent, or, in other words, it is to be in money if allowed. If made in money, an appraisement is not necessary, as an appraisement of money would consist in nothing but counting it: Larrison's Estate, 36 Pa. 130; Francis's Estate, 5 Kulp, 21; Silvius's Estate, 17 W. N. C. 447, and same in 20 W. N. C. 389. In this case, therefore, there was no legal necessity for an appraisement.

It is set up that the claim for the exemption was made too late. In this instance the claim is made in behalf of the four minor children, they being of tender years. Their father died on April 13, 1922. In June of the same year the Evangelical Home was appointed guardian of them, not receiving knowl-

3 D. & C.

Hartley's Estate.

edge of this appointment, however, till about the middle of September following. At the audit held about two months afterward, the guardian appears and makes claim for this exemption. Is it too late?

Necessarily the exemption must come from the proceeds of the sale of the real estate and personalty, chiefly from the real estate, both having been sold and converted into money. No appraisement nor setting aside of personal property was necessary.

Neither the Act of 1851 nor the Act of 1917 mentions any time within which the claim must be made. The Act of 1917 provides as follows: "If said $500, or any part thereof, shall be claimed out of money or the proceeds of real or personal property belonging to the estate, it shall be the duty of the executor or administrator to set apart to said widow or children the amount so claimed out of said money or out of the proceeds of said real or personal property after the same shall have been sold."

It must of necessity be this part of the Act of 1917 under which we are proceeding, and it will be noted that no time is set when the claim is to be made, but the exemption is to be set apart to the children after the real estate is sold, which naturally must be some time after administration is granted.

In this case we have five minor children, who have no knowledge whatever concerning their rights. They have no guardian legally authorized to act for them till the middle of September, and at the audit in November, the guardian makes demand for the exemption. We do not think the claim for this exemption was made too late, and even if it was late, we would feel inclined to stretch a point to allow these unprotected orphan children their legal rights. The law favors the exemption claim for either the widow or children. We do not deem it fair or equitable to deprive them of this exemption simply because *some one* did not make claim for them earlier in the proceedings.

In Fiddler's Estate, 14 Dist. R. 359, the claim was made before the auditor and allowed. And so in Kirkpatrick's Estate, 5 Phila. 98; and so in Potts's Estate, 3 Walk. 135.

And there is no definite time within which the claim must be made: Lane's Estate, 6 Dist. R. 618.

We fully agree that the claim must be made before the rights of others are prejudiced. For example, where costs of sale have been incurred in selling the same property that would have been taken or in making a second appraisement, or other means whereby costs or expense would be made or parties deprived of their just dues. But we fail to see how any one here is prejudiced by the allowance of this exemption. It is true the estate is insolvent by the allowance of the claim, paying .524 per cent. of its indebtedness, but this same insolvency would exist whether the claim for this exemption was presented early or late.

In the case of Banks's Appeal, 1 Monaghan, 463, six months after decedent's death, the widow's claim was allowed out of funds in the hands of a third party without appraisement, although this same fund had been attached two years before decedent's death by one of his creditors.

In Hurley's Estate, 5 W. N. C. 101, a delay of more than a year will not prejudice the claimant where creditors are not injured.

In Williams's Estate, 141 Pa. 436, it was held that a delay of two and one-half years in making a demand for exemption is not necessarily a waiver. So in Snider's Estate, 16 Pa. C. C. Reps. 238.

Had the funds of this estate been paid out to creditors, we are free to say the demand would be too late, or if left to run an unreasonable length of time,

Hartley's Estate.

and what is an unreasonable time, or what is not, must largely be governed by the attending conditions and surrounding circumstances. In the present case, the demand having been made about seven months after the death of the decedent, we think it was made in time and the exemption should be allowed.

And now, to wit, Jan. 31, 1923, for the reasons given in this opinion, the exceptions are dismissed and the report of the auditor is affirmed.

From Charles P. Ulrich, Selins Grove, Pa.